Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email:      rob@hbsslaw.com
                johnd@hbsslaw.com
                toryb@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Capane, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| LM General Insurance Company, an Illinois corporation, Liberty Mutual Personal Insurance Company, a Massachusetts corporation; Liberty Insurance Underwriters Inc., a New York corporation; Liberty Mutual Fire Insurance Company, a Massachusetts corporation; Liberty Mutual Insurance Company, a Massachusetts corporation; Liberty Insurance Corporation, a Massachusetts corporation; LM Insurance Company, a Massachusetts corporation; State Auto Property & Casualty Insurance Company, an Ohio corporation; State Automobile Mutual Insurance Company, an Ohio corporation; Ohio Casualty Insurance Company, an Ohio corporation; Ohio Security Insurance Company, an Ohio corporation; American Economy Insurance Company, an Indiana corporation; | |
| Defendants. | |

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     PARTIES ............................................................................................... 4

III.    JURISDICTION AND VENUE ........................................................... 5

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ..................... 6

V.      LIBERTY IMPROPERLY REFUSES TO DISCLOSE AND STACK CAPANE'S COVERAGE ...................................................... 8

VI.     CLASS ACTION ALLEGATIONS ................................................... 15

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) .................................. 18

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ............................. 18

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS) ............................. 19

PRAYER FOR RELIEF ............................................................................. 20

## I.     INTRODUCTION

1.      Auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims unless the insurers comply with two simple requirements. First, they must include clear and unambiguous language disavowing the ability to stack multiple policies or coverages. Second, they must inform their insureds of the right to select the policy or coverage that applies to the accident. A.R.S. § 20-259.01(H). The insurers can fulfill this notice requirement by either (1) including a "statement" in the policy "inform[ing]" the insured of their "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." *Id*. Defendants never satisfied either requirement for any insured during the class period.

2.      "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages exist, and unless the insurer disclaims stacking, those coverage limits are added together to provide "stacked" benefits for a single claim. Each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co*., 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

3.     The requirement for insurers to inform the insured of their right to select one policy or coverage if not already stated in the policy empowers policyholders to make informed choices regarding their coverage. This ensures that policyholders are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages, thereby enhancing transparency and confidence in the insurance process.

4.     Beyond the obligations of A.R.S. § 20-259.01(H), when an insured is injured, insurance companies must work to find all available coverage for the insured, reasonably investigate the claim and applicable law, identify and disclose coverages and limits, inform the insured accurately about available coverages and benefits, construe the policy in accordance with known law, treat its insured fairly and reasonably, give the insured's interests equal consideration, and not conceal or misrepresent  pertinent policy provisions, benefits or coverages.

5.     In handling UM/UIM claims for its customers with multiple covered vehicles, Defendants breached each of these duties as well as the insurance contracts themselves.

6.     Plaintiff brings this action on behalf of all insureds who were deprived of their right to stack benefits by any insurer linked together with Defendant LM General Insurance Company. Under A.R.S. § 20-259.01(H), "insurer" includes "every insurer within a group of insurers under a common management," thereby implicating all such insurers in both the rights and duties set forth and allowing certain acts of one insurer to inure to the benefit of other insurers because they are under common management. This common-management standard proves using an admitted and established relationship founded on management, legal, and operational relations, thereby establishing that the entities are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious" should the claim go forward. *Payton v. County of Kane*, 308 F.3d

673 (7th Cir. 2002), *cert. denied*, 540 U.S. 812 (2003)(quoting *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)).[2]

7.     As a matter of uniform and standard practice and procedure, Defendant LM General Insurance Company applied a single UM/UIM coverage limit to Plaintiff's claim even though Defendant LM General Insurance Company neither included clear and unambiguous language disavowing the customer's ability to stack multiple coverages on the policy nor informed the class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising class members of that right in writing. Similarly, none of the other Defendants, for their respective insureds, complied with either of the statutory requirements of A.R.S. § 20-259.01. More precisely, no Defendant (1) included clear and unambiguous policy language disavowing the insured's ability to stack multiple policies or coverages or (2) informed the customer of the right to select which coverage to apply to the accident under either of the methods prescribed by statute.

8.     Plaintiff is an insured under a LM General Insurance Company policy purchased by Donald and Roiann Silliman, and he brings this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding his rights and the rights of the Class under the applicable auto insurance policy or policies ("the Liberty Policy" or "the Liberty Policies") and (b) state law based on diversity jurisdiction.

9.     Regarding Plaintiff specifically, Defendant LM General Insurance Company was responsible for disclosing and providing UM/UIM coverage up to the stacked limits

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

required by Arizona law and the properly-construed insurance policy but failed to do so. Having failed to qualify for the anti-stacking opportunity permitted by law, failed to disclose the existence of stacked coverages to its insureds, and failed to notify the insured of his right to select, Defendant LM General Insurance Company breached its contractual and legal duties to its customers, including underpaying the benefits due.

## II.   PARTIES

10.   Plaintiff Daniel Capane is a resident and citizen of Arizona.

11.   Defendant LM General Insurance Company is an insurance company incorporated under the laws of Massachusetts, with its principal place of business in Massachusetts, but which does business in the state of Arizona.

12.   The remaining Defendants are insurance companies selling property & casualty insurance in Arizona and, upon information and belief, consider themselves under the "common management" standard set forth in A.R.S. § 20-259.01(H) with respect to LM General Insurance Company and all other Defendants named herein, and comprise the following insurers:

   a.   Liberty Mutual Personal Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in New Hampshire and doing business in Arizona;

   b.   Liberty Insurance Underwriters Inc., an insurance company incorporated under the laws of New York and domiciled in Illinois and doing business in Arizona;

   c.   Liberty Mutual Fire Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in Wisconsin and doing business in Arizona;

   d.   Liberty Mutual Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in Massachusetts and doing business in Arizona;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

e.  Liberty Insurance Corporation, an insurance company incorporated under the laws of Massachusetts and domiciled in Illinois and doing business in Arizona;

f.  LM Insurance Corporation, an insurance company incorporated under the laws of Massachusetts and domiciled in Illinois and doing business in Arizona;

g.  State Auto Property & Casualty Insurance Company, an insurance company domiciled under the laws of Ohio and headquartered in Iowa and doing business in Arizona;

h.  State Automobile Mutual Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

i.  Ohio Casualty Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in New Hampshire and doing business in Arizona;

j.  Ohio Security Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in New Hampshire and doing business in Arizona; and

k.  American Economy Insurance Company, an insurance company incorporated under the laws of Indiana and domiciled in Indiana and doing business in Arizona.

## III.   JURISDICTION AND VENUE

13.   This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendants are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity

exists. Plaintiff is a citizen of Arizona, and Liberty is a citizen of Massachusetts (where it is incorporated and has its principal place of business, respectively).

14.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Liberty Policies were issued in this District.

15.     Whenever it is alleged in this Complaint that Liberty did any act or thing, it is meant that Liberty and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Liberty or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Liberty and its officers, agents, servants, employees or representatives. Specifically, Liberty is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW

16.     Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

17.     Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197, quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000).

18.     Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must clearly disclaim stacking multiple policies and coverages as well as informing insureds of their right to select which policy or coverage will apply to the accident by either drafting the policy to "contain a

statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or, absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

19. "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

20. The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

21. "Subsection (H) is not exclusively limited to circumstances where multiple policies exist—it applies to 'multiple policies or coverages.'" *Hoelbl v. GEICO*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. App. Nov. 15, 2012), *review denied* (Apr. 23, 2013); *see also GEICO v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014) (following *Hoelbl*, and explaining that for applying subsection (H) "it did not matter if those multiple vehicles were covered by the same policy or separate policies.").

22. Under Subsection (H), "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages). *See also Heaton, et. al v. Metropolitan Group Property and Casualty Ins. Co.*, No. 2:21-CV-00442-SRB (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage. . . . Having found that Ms. Heaton and Ms. Bell have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both Ms. Heaton and Ms. Bell may stack their available coverages because Metropolitan did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking.").

23.     Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

24.     The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[3]

## V.     LIBERTY IMPROPERLY REFUSES TO DISCLOSE AND STACK CAPANE'S COVERAGE

25.     On October 16, 2016, Zachary Phillips was operating a car that failed to yield and struck Plaintiff on his motorcycle.

26.     Mr. Phillips was negligent in causing the accident, and he was the sole cause of the accident.

27.     On October 19, 2016, Plaintiff's counsel wrote to LM General Insurance Company[4] to advise it that Mr. Capane was injured when his motorcycle collided with an automobile.

28.     The same day, Plaintiff opened a claim against Liberty, which was assigned a claim number of LA000-034781444-02.

---

[3] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

[4] For purposes of Mr. Capane's specific facts, "Liberty" refers only to LM General Insurance Company.

29.     As a result of the accident, Plaintiff sustained severe injuries, with medical specials exceeding $235,000.00 around the time of the claim. Liberty knew that Mr. Capane was admitted into Chandler Regional Hospital for evaluation and treatment of his accident injuries. He suffered a displaced pelvis fracture, a broken foot, and a fracture of the L-2 spine. He also experienced pain in his left shoulder and left fifth digit. Mr. Capane underwent surgery on his pelvis on October 18, 2016.

30.     Given the severity of the injuries as a result of the accident, the insureds were underinsured as to Plaintiff Capane. *See* A.R.S. § 20-259.01(G).

31.     On November 7, 2016, Plaintiff's counsel requested information on the UIM limit of Plaintiff's policy.

32.     On December 15, 2016, Plaintiff advised Liberty that, "[b]ased upon the pain and suffering Mr. Capane has experienced, in addition to his medical expenses, we are recommending that he accept no less than policy limits totaling $300,000.00 as settlement for this claim."

33.     Plaintiff's damages exceeded the amount of insurance available to the tortfeasor, and the tortfeasor's insurance offered and, at some point after December 15, 2016, paid policy limits.

34.     To protect himself and his guests and family members from uninsured or underinsured tortfeasors, Plaintiff purchased UM/UIM insurance through Liberty. At the time of loss, he was insured under a Liberty (specifically LM General Insurance Company) auto insurance policy that insured three cars: a 2015 Honda Civic, a 2015 Scion XB, and a 2016 Toyota Tundra. This policy number was AOS-268-356315 -40 6 8.

35.     Each vehicle's coverage provided Plaintiff with UIM benefits of $100,000 per person and $300,000 per occurrence.

36.     Plaintiff Capane's damages attributable to Mr. Phillip's fault exceeded the available amount of Mr. Phillip's bodily injury liability coverage, and the UIM coverages on the three vehicles insured under the Capane Liberty policy.

37.    In the "Underinsured Motorists Coverage - Arizona" endorsement to Plaintiff's policy, Liberty agreed to pay as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**: 1. Sustained by an **insured**; and 2. Caused by an accident.
>
> …

38.    In the "Uninsured Motorists Coverage - Arizona" endorsement to Plaintiff's policy, Liberty agreed to pay as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**: 1. Sustained by an insured; and 2. Caused by an accident.

39.    On January 10, 2017, Liberty sent a letter advising Plaintiff that only one of the three vehicles on the policy provides UIM coverage, and that Plaintiff's policy, though it covered three vehicles, only provides UIM coverage with limits of $100,000 "each person" and $300,000 "each accident."

40.    It also advised him for the first time that it was going to pay him this policy limits based on the UIM limits applicable to the 2015 Honda Civil, unless Plaintiff "wishes the $100,000 payment to be made under the UIM limit for one of the *other* vehicles covered by the policy...." (Emphasis in the original.)

41.    Liberty had notice of the collision more than 30 days before it sent the January 10, 2017 letter. Liberty was advised on October 19, 2016, making Liberty's letter at least 80 days late. The January 10, 2017 letter does not, therefore, satisfy the requirements of A.R.S. § 20-259.01(H).

42.    On December 29, 2016, Plaintiff, through counsel, sent Liberty a letter for the second time demanding stacked benefits.

43.    On January 10, 2017, Liberty informed Plaintiff that the applicable policy limit for the UIM claim was $100,000.

44.     Liberty did not notify Plaintiff or any other class member that if the required notice was not sent within thirty days of the accident, Liberty would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

45.     The Liberty Policy under which Plaintiff was insured is Liberty's standard form Policy for personal (i.e., non-commercial) auto policies.

46.     The Liberty Policy fails to include a statement informing the insureds of their "right to select one policy or coverage" as applicable to any one accident. As used herein, the "Liberty Policy" or the "Liberty Policies" means any personal auto policy issued to an Arizona insured by any and all Liberty entities under common management. Every one of these entities' policies fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered accident.

47.     The Liberty Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so only one "policy or coverage" shall be applicable to any one accident, and (b) it does not inform the insured, either in the policy itself or by letter within 30 days of notice of the insured event, of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident. It merely states that the limit of liability for Uninsured and Underinsured Motorist Coverage is "shown in the Declarations for each person for Underinsured Motorists Coverage," no matter how many vehicles are listed:

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

   Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

   This is the most we will pay regardless of the number of:

   1.  **Insureds**;

   2.  Claims made;

   3.  Vehicles or premiums shown in the Declarations; or

   4.  Vehicles involved in the accident.

48.     The declarations page of the Liberty policy also does not inform the insured of their "right to select one policy or coverage."

49.     Liberty also did not, within 30 days of being notified of the October 16, 2016 accident at issue here, send Plaintiff or any other insured under the Policy any written notice of Plaintiff's "right to select one policy or coverage."

50.     As a general practice, whenever Liberty fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Liberty does not provide stacked benefits unless specifically requested by the insured to do so.

51.     These were simple options—informing the insureds of their rights in the policy itself or by written notice within 30 days after notice of the accidents—and either approach would have precluded stacking the UM/UIM coverages on class members' vehicles covered under the Liberty Policies.

52.     Liberty, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Liberty Policies.

53.     Liberty never disclosed or provided stacked UIM coverages to Plaintiff. Liberty, therefore, has denied Plaintiff benefits to which he is entitled under the Liberty Policy and Arizona law.

54.     As a general practice, Liberty does not disclose or provide stacked UM/UIM coverages to Plaintiff or class members under the Liberty Policies after a covered accident. Liberty has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

55.     Liberty knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

56.     Liberty knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

57.    Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

58.    Liberty knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

59.    Liberty chose not to follow those practices.

60.    Liberty on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits when requested by the insured to do so.

61.    Liberty failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

62.    Liberty failed, as to Plaintiff and the Class, to investigate, identify, acknowledge, and disclose the existence of stacked UM/UIM coverages under the Liberty Policies.

63.    Liberty and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Liberty Policies.

64.     On information and belief, Liberty received legal advice that its policy language and failure to give proper notice violated Arizona law, but Liberty disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

65.     On information and belief, Liberty received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay stacked UM/UIM coverages likely violated Arizona law. Liberty disregarded that legal advice.

66.     On information and belief, Liberty willfully concealed the existence of stacked UM/UIM coverages from Plaintiff and the Class.

67.     Liberty has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

68.     Instead, when paying UM or UIM benefits, Liberty has a practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment. Liberty does so despite knowing the insured is entitled to the payment without signing a release, and that it will issue payment of that benefit even if the insured declines to execute the release.

69.     Liberty's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

70.     Liberty's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

71.     Liberty's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge,

disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Liberty paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VI.    CLASS ACTION ALLEGATIONS

72.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

73.     The class consists of the following:

> From January 1, 2006, to the date of entry of judgment, all persons who (1) were insured under at least one policy insuring multiple vehicles issued in Arizona by any Defendant, and (2) who experienced a covered loss where the insured person received UM/UIM benefits and either:
>
> > (1) the UM/UIM benefits were limited to the limits of coverage of a single vehicle, or
> >
> > (2) the UM/UIM benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage of a single vehicle.

74.     While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Liberty.

75.     There are questions of fact and law common to the class, including the following:

> i.     Whether the Liberty Policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Liberty to preclude stacking;
>
> ii.    Whether Liberty failed to send timely notice to its insureds after an accident of their right to select one UM/UIM policy or coverage;

iii.  Whether Liberty concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Liberty Policies;

iv.  Whether Liberty failed to stack UM/UIM policies or coverages;

v.  Whether, through the foregoing practice, Liberty breached its contracts with its insureds;

vi.  Whether, through the foregoing practice, Liberty breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

vii.  Whether, through the foregoing practice, Liberty caused and will continue to cause harm to its insureds;

viii.  Whether Liberty is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law;

ix.  Whether Plaintiff and the Class are entitled to declaratory relief;

x.  Whether Liberty has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xi.  Whether Liberty's above-referenced conduct as to the Class warrants an award of compensatory damages;

xii.  Whether Liberty's above-referenced conduct as to the Class warrants an award of punitive damages; and

xiii.  Whether Plaintiff and the class are entitled to an award of attorney's fees.

76.  Plaintiff has the same interests in this matter as all other members of the class, and his claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members he seeks to represent. Plaintiff and all class members have been harmed by Liberty's common course of conduct as outlined herein. The harm to each class member was caused by Liberty's wrongful conduct.

77.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

78.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

79.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Liberty's actions are generally applicable to the class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the class as a whole.

80.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

81.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Liberty's conduct constitute bad faith under Arizona law—will materially advance the litigation.

82.    Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Liberty has concealed, failed to disclose or misled class members about their rights and those class members will remain ignorant of their potential claims against Liberty unless court-supervised notice is ordered.

83.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of other respective Class

members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

84.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

85.     Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Liberty Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Liberty's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

86.     Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Liberty Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Liberty Policies, that Liberty was required to disclose the existence of stacked coverages to them, and that Liberty was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Liberty Policies and its practices did not allow it to preclude stacking under Arizona law.

87.     This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

88.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

89.     Each Class member (including Plaintiff) is a party to one or more of the standardized Liberty Policies.

90.     Liberty further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Liberty Policies under Arizona law, despite Liberty's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

91.     The Class (including Plaintiff) has been and continues to be damaged by Liberty's breaches of contract.

### THIRD CLAIM FOR RELIEF
### (BAD FAITH AS TO THE CLASS)

92.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

93.     Inherent and implied in the Liberty Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

94.     The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for

its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

95.     The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

96.     Liberty acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose, and pay benefits up to the stacked UM/UIM limits of the Liberty Policies, despite Liberty's failure to comply with A.R.S. § 20-259.01(H).

97.     Liberty did so, even though it knew or should have known the Liberty Policies failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

98.     Liberty, therefore, acted in bad faith toward Plaintiff and the Class.

99.     Liberty's conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

100.     Liberty is, therefore, liable to the Class for punitive damages, which can be proven with common evidence.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, both individually and on behalf of the Class, demands a trial by jury on all claims so triable, and respectfully request that the Court (i) certify the proposed Class, (ii) designate Plaintiff as representative of the Class, (iii) appoint Robert Carey or Hagens Berman as Class Counsel, (iv) designate the requested issue class to establish liability only for Claim Three under the appropriate provisions of Federal Rule of Civil Procedure 23, and (v) enter judgment in Plaintiff's favor against Defendants including the following relief:

A.     A declaratory judgment that Plaintiff and the Class are entitled to stacked UM/UIM coverages under the Liberty Policies, and a declaration

1    establishing or order mandating that the Class is entitled to disclosure of the

2    existence of stacked coverages.

3    B.    Compensatory damages for the Class in an amount to be proven at trial.

4    C.    Punitive damages as permitted by law.

5    D.    An award of Plaintiff's attorney's fees pursuant to any applicable authority

6    including but not limited to A.R.S § 12-341.01.

7    E.    Statutory interest pursuant to A.R.S. § 20-462(A).

8    F.    For costs and expenses incurred herein to the maximum extent permitted by

9    law.

10    G.    Pre-judgment and post-judgment interest to the maximum extent permitted

11    by law.

12    H.    Such other relief as the Court deems just and proper.

13    # # #

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     Dated: May 13, 2024           Respectfully submitted by,

2                                HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                By: *s/ Robert. B. Carey*
                                      Robert B. Carey

5                                    John M. DeStefano
                                   E. Tory Beardsley

6                                    11 West Jefferson Street, Suite 1000

7                                    Phoenix, Arizona 85003
                                   Telephone: (602) 840-5900

8                                    Facsimile: (602) 840-3012
                                   Email:     rob@hbsslaw.com

9                                                    johnd@hbsslaw.com

10                                                    toryb@hbsslaw.com

11                                THE SLAVICEK LAW FIRM

12                                    Brett L. Slavicek (SBN 019306)
                                   James Fucetola (SBN 029332)

13                                    Justin Henry (SBN 027711)
                                   5500 North 24th Street

14                                    Phoenix, Arizona 85016

15                                    Telephone:  (602) 285-4435
                                   Facsimile:  (602) 287-9184

16                                    Email:    brett@slaviceklaw.com

17                                              james@slaviceklaw.com

18                                              justin@slaviceklaw.com

19                                *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28