1  Robert B. Carey (SBN 011186)
   John M. DeStefano (SBN 025440)
2  E. Tory Beardsley (SBN 031926)
   **HAGENS BERMAN SOBOL SHAPIRO LLP**
3  11 West Jefferson Street, Suite 1000
   Phoenix, Arizona 85003
4  Telephone: (602) 840-5900
   Facsimile: (602) 840-3012
5  Email:      rob@hbsslaw.com
                johnd@hbsslaw.com
6               toryb@hbsslaw.com

7  *Attorneys for Plaintiff*

8  *[Additional counsel on signature page]*

9              UNITED STATES DISTRICT COURT

10                 DISTRICT OF ARIZONA

11 | Daniel Capane, on behalf of himself and all others similarly situated, | Case No. 2:24-cv-01095-PHX-SMB |

12 | | |
   | Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
13 | | |
   | v. | |
14 | | **JURY TRIAL DEMANDED** |
15 | LM General Insurance Company, an Illinois corporation, Liberty Mutual Personal | |
16 | Insurance Company, a Massachusetts corporation; Liberty Insurance Underwriters | (Honorable Susan M. Brnovich) |
17 | Inc., a New York corporation; Liberty Mutual Fire Insurance Company, a | |
18 | Massachusetts corporation; Liberty Mutual Insurance Company, a Massachusetts | |
19 | corporation; Liberty Insurance Corporation, a Massachusetts corporation; LM Insurance | |
20 | Company, a Massachusetts corporation; State Auto Property & Casualty Insurance | |
21 | Company, an Ohio corporation; State Automobile Mutual Insurance Company, an | |
22 | Ohio corporation; Ohio Casualty Insurance Company, an Ohio corporation; Ohio | |
23 | Security Insurance Company, an Ohio corporation; American Economy Insurance | |
24 | Company, an Indiana corporation; | |
25 | Defendants. | |

26

27

28

TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     PARTIES ........................................................................................... 4

III.    JURISDICTION AND VENUE ........................................................ 6

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ..................... 6

V.      LIBERTY IMPROPERLY REFUSES TO DISCLOSE AND STACK CAPANE'S COVERAGE .......................................................... 9

VI.     DEFENDANTS' MISCONDUCT REGARDING STACKING IS SYSTEMIC .. 16

VII.    CLASS ACTION ALLEGATIONS ................................................. 21

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) ................................. 25

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) .................................... 25

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS) ............................. 26

PRAYER FOR RELIEF ................................................................................... 28

FIRST AMENDED
CLASS ACTION COMPLAINT

# I.    INTRODUCTION

1.    Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM," "UIM," or "UM/UIM") motor vehicle accident claims unless the insurers comply with two simple requirements: Insurers must both (1) "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking," and (2) "satisfy the notice requirement [of A.R.S. § 20-259.01(H) by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 ¶ 11 (Ariz. 2023), *quoting* A.R.S. § 20-259.01(H). Here, Defendants failed to meet both requirements and yet failed to stack coverages, resulting in underpayments to Plaintiff and the class.

2.    "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] UM/UIM coverage is a personal coverage—it covers the person, not the vehicle. When there are multiple vehicles insured under one or more policies, multiple UM/UIM coverages exist, and unless the insurer disclaims stacking. *See Franklin*, 532 P.3d at 1146, 1151, ¶¶ 2, 24. Those coverage limits can be added together to provide "stacked" benefits for a single claim. *Id.* In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the aggregated (stacked) coverage limit is determined by adding together each vehicle's UM or UIM coverage.

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

3.     The requirement that insurers inform each insured claimant of their right to select one policy or coverage empowers insured claimants to make informed choices about coverage. It ensures that insured claimants are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages.

4.     Beyond the obligations of A.R.S. § 20-259.01(H), when an insured is injured and presents a first-party claim, the duty of good faith and fair dealing requires an insurer to meet several crucial duties: For example, it must (1) reasonably investigate the claim and applicable law; (2) work to find all available coverage for the insured; (3) identify and fully disclose all pertinent benefits, coverages, and policy provisions; (4) inform the insured accurately about available coverages and benefits; (5) avoid mispresenting or concealing any pertinent benefits, coverages, or policy provisions; (6) construe the policy in accordance with known law; (7) treat its insured fairly and reasonably; and (8) give the insured's interests equal consideration.

5.     In handling UM/UIM claims for Plaintiff and other insureds with multiple covered vehicles under the applicable policies, Defendants breached each of these duties as well as the insurance contracts themselves.

6.     Plaintiff brings this action on behalf of all insureds who were deprived of their right to stack benefits by Defendant LM General Insurance Company and other linked insurance companies under common management, sharing a common core of operations, or acting pursuant to common, communicated principles of policy interpretation and claims adjustment. Under A.R.S. § 20-259.01(H), "insurer" includes "every insurer within a group of insurers under a common management," thereby implicating all such insurers in the rights and duties set forth in the statute and allowing certain acts of one insurer to inure to the benefit of other insurers because they are under common management. Additionally, the Defendants share a common core of claims handling operations, procedures, and personnel that does not vary materially from one underwriting company to the next. The admitted and established relationship between Defendants in their management, legal, and operational relations—as well as the fact that their rights and duties intersect because they

FIRST AMENDED
CLASS ACTION COMPLAINT

are under "common management" for purposes of A.R.S. § 20-259.01(H)—establishes that the entities are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), *cert. denied*, 540 U.S. 812 (2003) (quoting *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir. 1973)).[2]

7.     As a matter of uniform and standard practice and procedure, Defendant LM General Insurance Company applied a single UM/UIM coverage limit to Plaintiff's claim even though Defendant LM General Insurance Company neither included clear and unambiguous language disavowing the customer's ability to stack multiple coverages on the policy nor informed the class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising class members of that right in writing. Similarly, none of the other Defendants, for their respective insureds, complied with either of the statutory requirements of A.R.S. § 20-259.01. More precisely, no Defendant (1) included clear and unambiguous policy language disavowing the insured's ability to stack multiple policies or coverages or (2) informed the customer of the right to select which coverage to apply to the accident under either of the methods prescribed by statute.

8.     Plaintiff is an insured under a LM General Insurance Company policy purchased by him, and he brings this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding his rights and the rights of the Class under the applicable

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

auto insurance policy or policies ("the Liberty Policy" or "the Liberty Policies") and (b) state law based on diversity jurisdiction.

9.      Regarding Plaintiff specifically, Defendant LM General Insurance Company was responsible for fully disclosing, applying, and paying UM/UIM coverage up to the stacked limits required by Arizona law and the properly construed insurance policy but failed to do so. Having failed to qualify for the anti-stacking opportunity permitted by law, having failed to disclose, provide, pay, and not conceal and misrepresent the existence of stacked coverages to its insureds, and having failed to notify the insured of his right to select, Defendant LM General Insurance Company breached its contractual, good faith, and legal duties to its customers, including underpaying the benefits due.

## II.    PARTIES

10.      Plaintiff Daniel Capane is a resident and citizen of Arizona.

11.      Defendant LM General Insurance Company ("LM General") is an insurance company incorporated under the laws of Massachusetts, with its principal place of business in Massachusetts, but which does business in the state of Arizona.

12.      The remaining Defendants (collectively with the above-referenced insurers, "Liberty") are insurance companies selling property & casualty insurance in Arizona and, upon information and belief, they (1) rely upon the same claims handling operations, procedures, and personnel as LM General and (2) consider themselves to be under "common management" within the meaning of A.R.S. § 20-259.01(H) with respect to LM General and each other, comprising the following entities:

  a.      Liberty Mutual Personal Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in New Hampshire and doing business in Arizona;

  b.      Liberty Insurance Underwriters Inc., an insurance company incorporated under the laws of New York and domiciled in Illinois and doing business in Arizona;

c.     Liberty Mutual Fire Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in Wisconsin and doing business in Arizona;

d.     Liberty Mutual Insurance Company, an insurance company incorporated under the laws of Massachusetts and domiciled in Massachusetts and doing business in Arizona;

e.     Liberty Insurance Corporation, an insurance company incorporated under the laws of Massachusetts and domiciled in Illinois and doing business in Arizona;

f.     LM Insurance Corporation, an insurance company incorporated under the laws of Massachusetts and domiciled in Illinois and doing business in Arizona;

g.     State Auto Property & Casualty Insurance Company, an insurance company domiciled under the laws of Ohio and headquartered in Iowa and doing business in Arizona;

h.     State Automobile Mutual Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in Ohio and doing business in Arizona;

i.     Ohio Casualty Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in New Hampshire and doing business in Arizona;

j.     Ohio Security Insurance Company, an insurance company incorporated under the laws of Ohio and domiciled in New Hampshire and doing business in Arizona; and

k.     American Economy Insurance Company, an insurance company incorporated under the laws of Indiana and domiciled in Indiana and doing business in Arizona.

FIRST AMENDED
CLASS ACTION COMPLAINT

### III.    JURISDICTION AND VENUE

13.    Plaintiff is a citizen of Arizona. Defendants, respectively, are citizens of Massachusetts, New Hampshire, New York, Illinois, Ohio, Wisconsin and Indiana. Therefore, complete diversity exists.

14.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendants are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

15.    Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims described herein occurred within this District and the Liberty Policies were issued in this District.

16.    Whenever it is alleged in this Complaint that Liberty did any act or thing, it is meant that Liberty and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Liberty or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Liberty and its officers, agents, servants, employees or representatives. Specifically, Liberty is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

### IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

17.    Arizona's statute governing UM/UIM coverage is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

18.    Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 270 (Ariz.

2008); *Sharp*, 277 P.3d 192, at 193, 197. The UMA has "a remedial purpose and must be construed liberally in favor of coverage." *Id.* at 197 ¶ 18 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 9 P.3d 1049 (Ariz. 2000)).

19.    Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking." *Franklin*, 532 P.3d at 1148 ¶ 11. In addition, they must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." *Id.* at 1148 ¶¶ 10-11 (quoting A.R.S. § 20-259.01(H)).

20.    Because Subsection (H) uses the word "may," it is not self-executing; rather, it "permits" or "authorizes" an insurer to take affirmative steps so that only one "policy or coverage" applies. *Sharp*, 277 P.3d at 196; *see also Franklin*, 532 P.3d at 1148 ¶ 10 ("Insurers may limit stacking, but insurers must satisfy the statute's notice requirement.") (internal quotation omitted); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995) ("this provision is not self-executing because its wording is merely permissive"); *Hanfelder v. GEICO Indem. Co.*, 422 P.3d 579, 581 ¶ 8 (Ariz. App. 2018) ("Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations.").

21.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." *Sharp*, 277 P.3d at 196 ¶ 15.

22.    Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under both multiple policies and a multi-vehicle insurance policy.

*Franklin*, 532 P.3d at 1153; *see also Heaton v. Metro. Grp. Prop. and Cas. Ins. Co.*, No. 2:21-CV-00442-SRB, at *7 (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage.").

23.    Under Subsection (H), an insurer cannot prevent stacking if it fails to include plain, express, and unambiguous policy language that prohibits and disavows the possibility of stacking. *Franklin,* 532 P.3d at 1148 ¶¶ 10-11.

24.    Also, to limit stacking under Subsection (H), "insurers must . . . satisfy the notice requirement [by]informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident. *Id.* (quoting § 20-259.01(H)); *see also Heaton,* 2021 WL 6805629 at *8 ("Having found that [plaintiffs] have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both [plaintiffs] may stack their available coverages because [the insurer] did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking."); *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697, at *2 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages, and stating: "Failure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law.").

25.    Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to the insured. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, providing fair and honest treatment, and giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 726 P.2d 565, 572-73 (Ariz. 1986).

26.    Among other things: "The carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to

achieve its rights under the policy." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 ¶ 21 (Ariz. 2000).

27.     The duty of good faith and fair dealing, apart from the responsibility to promptly pay covered claims, also "encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and [must] do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800 ¶ 54 (Ariz. App. 2012) (citing *Rawlings*, 726 P.2d at 572-73).

## V.     LIBERTY IMPROPERLY REFUSES TO DISCLOSE AND STACK CAPANE'S COVERAGE

28.     On October 16, 2016, Zachary Phillips was operating a car that failed to yield and struck Plaintiff on his motorcycle.

29.     Mr. Phillips was negligent in causing the accident, and he was the sole cause of the accident.

30.     On October 19, 2016, Plaintiff's counsel wrote to LM General Insurance Company to advise it that Mr. Capane was injured when his motorcycle collided with an automobile.

31.     The same day, Plaintiff opened a claim against LM General, which was assigned a claim number of LA000-034781444-02.

32.     As a result of the accident, Plaintiff sustained severe injuries, with medical specials exceeding $235,000.00 around the time of the claim. LM General knew that Mr. Capane was admitted into Chandler Regional Hospital for evaluation and treatment of his accident injuries. He suffered a displaced pelvis fracture, a broken foot, and a fracture of the L-2 spine. He also experienced pain in his left shoulder and left fifth digit. Mr. Capane underwent surgery on his pelvis on October 18, 2016.

33.     Given the severity of the injuries as a result of the accident, the insureds were underinsured as to Plaintiff Capane. *See* A.R.S. § 20-259.01(G).

34.    Plaintiff's damages exceeded the amount of insurance available to the tortfeasor, and the tortfeasor's insurance offered and, at some point after December 15, 2016, paid policy limits.

35.    To protect himself and his guests and family members from uninsured or underinsured tortfeasors, Plaintiff had purchased UM/UIM insurance. At the time of loss, he was insured under a Liberty (specifically LM General) auto insurance policy that insured three cars: a 2015 Honda Civic, a 2015 Scion XB, and a 2016 Toyota Tundra. This policy number was AOS-268-356315-40 6 8.

36.    Each vehicle's coverage provided Plaintiff with UIM benefits of $100,000 per person and $300,000 per occurrence.

37.    Plaintiff Capane's damages attributable to Mr. Phillip's fault exceeded the available amount of Mr. Phillip's bodily injury liability coverage, and the UIM coverages on the three vehicles insured under the Capane Liberty Policy.

38.    In the "Underinsured Motorists Coverage - Arizona" endorsement to Plaintiff's policy, Liberty agreed to pay as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**: 1. Sustained by an **insured**; and 2. Caused by an accident.
>
> …

39.    In the "Uninsured Motorists Coverage - Arizona" endorsement to Plaintiff's policy, Liberty agreed to pay as follows:

> We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**: 1. Sustained by an insured; and 2. Caused by an accident.

40.    On November 7, 2016, Plaintiff's counsel requested information on the UIM limit of Plaintiff's policy.

41.    On December 15, 2016, Plaintiff advised Liberty that, "[b]ased upon the pain and suffering Mr. Capane has experienced, in addition to his medical expenses, we are

recommending that he accept no less than policy limits totaling $300,000.00 as settlement for this claim."

42. On January 10, 2017, Liberty sent a letter advising Plaintiff that only one of the three vehicles on the policy provides UIM coverage, and that Plaintiff's policy, though it covered three vehicles, only provides UIM coverage with limits of $100,000 "each person" and $300,000 "each accident."

43. It also advised him for the first time that it was going to pay him this policy limits based on the UIM limits applicable to the 2015 Honda Civil, unless Plaintiff "wishes the $100,000 payment to be made under the UIM limit for one of the *other* vehicles covered by the policy...." (Emphasis in the original.)

44. Liberty had notice of the collision more than 30 days before it sent the January 10, 2017 letter. Liberty was advised of the accident no later than October 19, 2016, making Liberty's letter at least 80 days late. The January 10, 2017 letter does not, therefore, satisfy the requirements of A.R.S. § 20-259.01(H).

45. On December 29, 2016, Plaintiff, through counsel, sent Liberty a letter for the second time demanding stacked benefits.

46. On January 10, 2017, Liberty informed Plaintiff that the applicable policy limit for the UIM claim was $100,000.

47. Liberty did not notify Plaintiff or any other class member that if the required notice was not sent within thirty days of the accident, Liberty would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

48. The Liberty Policy under which Plaintiff was insured is Liberty's standard form Policy for personal (i.e., non-commercial) auto policies.

49. The Liberty Policy fails to include a statement informing the insureds of their "right to select one policy or coverage" as applicable to any one accident. As used herein, the "Liberty Policy" or the "Liberty Policies" means any personal auto policy issued to an

Arizona insured by any and all Liberty entities under common management. Every one of these entities' policies fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered accident.

50.    The Liberty Policy does not comply with A.R.S. § 20-259.01(H) because (a) it does not limit the UM/UIM coverage on each covered vehicle so only one "policy or coverage" shall be applicable to any one accident, and (b) it does not inform the insured, either in the policy itself or by letter within 30 days of notice of the insured event, of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident. The applicable endorsement merely states that the limit of liability for Uninsured and Underinsured Motorist Coverage is "shown in the Declarations for each person for Underinsured Motorists Coverage," no matter how many vehicles are listed:

> The first paragraph of the Limit of Liability provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:
>
> The limit of liability shown in the Schedule[1] or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
>
> 1. "Insureds;"
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the accident.

51.    Limit of Liability language, standing alone, does not preclude stacked Underinsured Motorist coverage. *See Franklin,* 532 P.3d at 1146 ¶ 2; *Lindsey*, 897 P.2d at 633; *Heaton,* 2021 WL 6805629.

52.    Elsewhere, the policy disavows stacking of multiple policies applicable to the accident and permits a selection between policies, but it makes no mention of stacking coverages for multiple vehicles under a single policy:

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, only one of the policies will apply to the accident. You will select the one policy that will apply.

53. The declarations page of the Liberty policy also does not disavow stacking, nor does it inform the insured of their "right to select one policy or coverage."

54. Liberty also did not, within 30 days of being notified of the October 16, 2016 accident at issue here, send Plaintiff or any other insured under the Policy any written notice of Plaintiff's "right to select one policy or coverage."

55. Accordingly, stacked Underinsured Motorist coverage for Plaintiff is permitted. *See* A.R.S. § 20-259.01(H); *Franklin,* 532 P.3d at 1146, 1148 ¶¶ 2, 11; *Heaton,* 2021 WL 6805629; *Schwallie*, 2013 WL 4478697.

56. Liberty failed to adequately investigate, reasonably evaluate, and promptly pay stacked Underinsured Motorist coverage to Plaintiff.

57. Liberty also failed to inform the Plaintiff of the availability of or potential for stacked Underinsured Motorist coverage in violation of Arizona law.

58. Liberty's silence in that regard, its written statements to Plaintiff that "the plain language of the policy and Arizona law do not permit Mr. Capane to stack the UIM coverages applicable to the three vehicles covered by the policy," and its Policy and notice practice that failed to comply with A.R.S. § 20-259.01(H), collectively and individually amount to a misrepresentation, failure to disclose, and/or concealment of the availability of or potential for stacked Underinsured coverage, in violation of Arizona law.

59. So doing, Liberty failed, as to stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and mispresented and concealed pertinent benefits, coverages, or policy provisions.

60. Liberty also failed, as to stacked UM/UIM coverage, to work to find all available coverage for the insured; failed to reasonably investigate the claim and applicable

law; failed to construe the policy in accordance with known law; failed to treat its insured fairly and reasonably; failed to give the insured's interests equal consideration; and on information and belief, failed to conduct any investigation let alone undertake a reasonable coverage investigation of available coverage.

61.    As a general practice, whenever Liberty fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Liberty does not provide stacked benefits unless specifically requested by the insured to do so.

62.    These were simple options—informing the insureds of their rights in the policy itself or by written notice within 30 days after notice of the accidents—and either approach would have precluded stacking the UM/UIM coverages on class members' vehicles covered under the Liberty Policies.

63.    Liberty, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Liberty Policies.

64.    Liberty never disclosed or provided stacked UIM coverages to Plaintiff. Liberty, therefore, has denied Plaintiff benefits to which he is entitled under the Liberty Policy and Arizona law.

65.    As a general practice, Liberty does not disclose or provide stacked UM/UIM coverages to Plaintiff or class members under the Liberty Policies after a covered accident. Liberty has provided stacked limits to insureds who specifically requested it do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiff and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

66.    Liberty knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

67.    Liberty knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

68.    Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies

(including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

69.    Liberty knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

70.    Liberty chose not to follow those practices.

71.    Liberty on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits when requested by the insured to do so.

72.    Liberty failed to pay Plaintiff and the Class stacked UM/UIM coverages to which they were entitled.

73.    Liberty failed, as to Plaintiff and the Class, to investigate, identify, acknowledge, and disclose the existence of stacked UM/UIM coverages under the Liberty Policies.

74.    Liberty and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Liberty Policies.

75.    On information and belief, Liberty received legal advice that its policy language and failure to give proper notice violated Arizona law, but Liberty disregarded

FIRST AMENDED
CLASS ACTION COMPLAINT

the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiff and the Class.

76.    On information and belief, Liberty received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay stacked UM/UIM coverages likely violated Arizona law. Liberty disregarded that legal advice.

77.    On information and belief, Liberty willfully concealed the existence of stacked UM/UIM coverages from Plaintiff and the Class.

78.    Liberty has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

79.    Liberty's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

80.    Liberty's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

81.    Liberty's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Liberty paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VI.    DEFENDANTS' MISCONDUCT REGARDING STACKING IS SYSTEMIC

82.    Plaintiff's LM General policy is a standardized auto policy with the same or substantially similar provisions in relevant part as the auto policies used by all Liberty during the relevant time period ("the Liberty Policies").

83.     The Liberty Policies do not comply with A.R.S. § 20-259.01(H) because (1) they contain no plain, express, and unambiguous disavowal of stacking and (2) they do not inform the insured claimants of their right to select one UM/UIM coverage as between multiple vehicles insured under the policy in the event of a covered accident. As used herein, the "Liberty Policies" means any auto policy issued to an Arizona insured by any and all Liberty entities under common management, sharing a common core of operations, or acting pursuant to common, communicated principles of policy interpretation and claims adjustment. Every one of these entities' policies fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under their policies, in the event of a covered accident.

84.     Liberty, as a standard practice for many years, also did not advise insured claimants, in writing within 30 days of receiving notice of the covered accident, of their "right to select one policy or coverage" as required by A.R.S. § 20-259.01(H).

85.     Liberty, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Liberty Policies. *See* A.R.S. § 20-259.01(H); *Franklin*, 532 P.3d at 1146, 1148 ¶¶ 2, 11; *see also Heaton*, 2021 WL 6805629; *Schwallie*, 2013 WL 4478697.

86.     Liberty knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

87.     As a standard practice, Liberty chose not to comply with those requirements.

88.     As a standard practice, Liberty failed to adequately investigate and reasonably evaluate stacked UM/UIM coverage to which Plaintiff and the Class were entitled.

89.     As a standard practice, Liberty failed to pay, promptly or otherwise, Plaintiff and the Class stacked UM/UIM coverage to which they were entitled.

90.     As a standard practice, whenever Liberty failed to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Liberty did not provide

stacked benefits except in the rare instance when specifically demanded by the insured claimant to do so.

91.    Liberty on limited occasions in Arizona has acknowledged, tendered, or paid stacked UM or UIM limits in the rare circumstance when demanded by the insured claimant to do so.

92.    Liberty did so voluntarily, having concluded the applicable Liberty Policies provided stacked UM/UIM coverage, and without issuing a reservation of rights or advising its insured that it did not believe stacked UM/UIM coverage was available.

93.    Liberty effectively silenced the squeaky wheels while continuing to underpay the vast majority Class members in violation of its contractual, good faith, and legal duties as a first-party insurer.

94.    As a matter of standard claims handling practice, if the insured claimant did not specifically request stacked Uninsured Motorist coverage or stacked Underinsured Motorist coverage, Liberty only paid the single vehicle UM or UIM limit rather than stacked UM/UIM coverage.

95.    Liberty did not notify Plaintiff or any other Class member that its Policies did not comply with A.R.S. § 20-259.01(H) and that if the required notice was not sent within 30 days of the accident, Liberty would, under Arizona law, owe to its insured claimants stacked UM/UIM coverage.

96.    Liberty knew or should have known that its failures to adequately investigate, reasonably evaluate, fully disclose, and promptly pay stacked UM/UIM coverage violated Arizona law.

97.    Liberty has one of the largest market shares for private passenger automobile policies in Arizona and nationwide.

98.    Liberty knew or should have known of the efforts by other major Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

99.    Liberty chose not to follow those practices for their personal auto policies.

100.    On information and belief, Liberty received legal advice as to whether it was

complying with Subsection (H) and stacking rules as to private passenger automobile claims in Arizona.

101. On information and belief, Liberty received legal advice on whether it had any obligation to provide stacked UM/UIM coverage in Arizona.

102. On information and belief, Liberty received legal advice that its policy language violated Arizona law on stacking.

103. On information and belief, Liberty received legal advice that its failure to give proper notice violated Arizona law including Subsection (H).

104. On information and belief, Liberty received legal advice that its failure to pay stacked UM/UIM coverage likely violated Arizona law including Subsection (H).

105. Liberty disregarded the legal advice it received, except in the rare circumstance when the insured claimant demanded stacked UM/UIM coverage.

106. Alternatively, Liberty recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverage as to Plaintiff and the Class.

107. Alternatively, Liberty knew or should have known its policy interpretation as to stacked UM/UIM coverage violated Arizona law.

108. Liberty's standard practice was to not inform their insureds of the availability of or potential for stacked UM/UIM coverage.

109. Liberty did so despite (a) knowing, based on legal advice, that stacked UM/UIM coverage was available to its insureds under Arizona law, and (b) acknowledging the existence of stacked UM/UIM coverage for the rare insured who demanded it.

110. Liberty affirmatively misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage in communications with UM/UIM claimants.

111. In so doing, Liberty failed, as to stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and

1    misrepresented and concealed pertinent benefits, coverages, or policy provisions.

2           112.    Liberty also failed, as to stacked UM/UIM coverage, to work to find all

3    available coverage for the insured; failed to adequately investigate and reasonably evaluate

4    the claim and applicable law; failed to construe the Liberty Policies in accordance with

5    known law; failed to treat its insureds honestly, fairly and reasonably; forced insureds to

6    go through needless adversarial hoops to achieve their rights under the policy; and failed

7    to give the insureds' interests equal consideration.

8           113.    Any insured claimant who received the maximum amount of a single

9    UM/UIM policy limit and who had other vehicles providing UM/UIM coverage was

10   entitled to notice of the additional coverage available and doubtless entitled to additional

11   benefits.

12          114.    Liberty and its agents violated Arizona Administrative Code ("AAC") § 20-

13   6-801(D)(1) by failing to fully disclose to Plaintiff and the Class the availability of or

14   potential for stacked UM/UIM coverage under the Liberty Policies.

15          115.    On information and belief, Liberty has a standard practice of disclosing to

16   insureds who have had an accident the availability of or potential for other policy benefits

17   they may be entitled to, such as medical payments coverage, collision, rental car, or rental

18   car.

19          116.    Liberty and its agents violated AAC § 20-6-801(D)(2) by concealing from

20   Plaintiff and the Class the availability of or potential for stacked UM/UIM coverage under

21   the Liberty Policies.

22          117.    Good faith claims handling required Liberty to implement a standard practice

23   of always informing insured claimants to whom a single limit of UM or UIM coverage is

24   tendered (a) the availability of or potential for stacked UM/UIM coverage under the Liberty

25   Policies, (b) the insurer's practice of paying these claims when asked and supported by

26   evidence, (c) additional monies may be owed to this claimant depending on the facts of

27   their case, and (d) the claimant may submit additional documentation for that purpose,

28   including medical bills and lost income.

118.    Liberty does not have any such good faith standard practice.

119.    To the contrary, Liberty had a standard practice of misrepresenting to Class members the potential for stacked UM/UIM coverage under the Liberty Policies.

120.    Despite having paid stacking claims in Arizona and received legal advice on its stacking obligations in this State, Liberty has failed to search and reopen its closed claim files to investigate, evaluate, and pay stacked UM/UIM coverage benefits it owes under Arizona law.

121.    Liberty knew or should have known that its standard claims handling practices as to stacking did not comply with Subsection (H).

122.    Liberty's actions were unreasonable, intentional, knowing, in reckless disregard of its insureds' rights, and in conflict with well-established Arizona law.

123.    Liberty's systemic misconduct described above has led to underpaying Plaintiff's UM and UIM claims and thousands of other UM/UIM claims, and thus resulted in Liberty paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VII.    CLASS ACTION ALLEGATIONS

124.    This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

125.    The "Class" consists of the following:

From the earliest possible date provided by law to the date of judgment, all persons who (1) were insured under at least one policy insuring multiple vehicles issued in Arizona by any Defendant, and (2) who experienced a covered loss where the insured person received UM or UIM benefits and either:

(1) the UM or UIM benefits were limited to the limits of coverage of a single vehicle, or

(2) the UM or UIM benefits were reduced due to apportionment among multiple claimants, with the collective

claim limited to the limits of coverage of a single vehicle.

126. The "Bad Faith Subclass" consists of the following:

> All Class members whose breach of contract claims for stacked UM/UIM coverage are found by the Court to be barred by A.R.S. § 12-555.

127. While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Liberty.

128. There are questions of fact and law common to the class, including the following:

i. Whether the Liberty Policy complies with A.R.S. § 20-259.01, allowing Liberty to preclude stacking;

ii. Whether Liberty failed to send timely notice to its insureds after an accident of their right to select one UM/UIM policy or coverage;

iii. Whether Liberty failed to stack UM/UIM policies or coverages;

iv. Whether Liberty knew or should have known its failure to pay stacked UM/UIM coverage violated Arizona law;

v. Whether Liberty disregarded the legal advice it received about stacking;

vi. Whether Liberty recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverages;

vii. Whether Liberty or its agents systematically failed to fully disclose the availability of or potential for stacked UM/UIM coverage under the Liberty Policies;

viii. Whether Liberty or its agents systematically misrepresented, failed to disclose, and/or concealed the availability of or potential for stacked UM/UIM coverage under the Liberty Policies in communications with insureds;

ix. Whether, through the foregoing practice, Liberty breached its contracts with its insureds;

x.      Whether, through the foregoing practice, Liberty breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

xi.     Whether, through the foregoing practice, Liberty caused and will continue to cause harm to its insureds;

xii.    Whether Liberty is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits they owe under Arizona law;

xiii.   Whether Plaintiff and the Class are entitled to declaratory relief;

xiv.    Whether Liberty's above-referenced conduct as to the Class warrants an award of compensatory damages;

xv.     Whether Liberty's above-referenced conduct as to the Class warrants an award of punitive damages; and

xvi.    Whether Plaintiff and the class are entitled to an award of attorney's fees.

129.    There are additional questions of law and fact common to the Bad Faith Subclass, including the following:

Whether Class members whose claims for stacked UM/UIM coverage are held to be barred by A.R.S. § 12-555 may join in the class-wide request for relief because of Liberty's systematic concealment, misrepresentation, failure to fully disclose, and Liberty's misleading behavior as to stacked UM/UIM coverage.

130.    Plaintiff has the same interests in this matter as all other members of the class, and his claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members he seeks to represent. Plaintiff and all class members have been harmed by Liberty's common course of conduct as outlined herein. The harm to each class member was caused by Liberty's wrongful conduct.

131.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

132.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

133.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Liberty's actions are generally applicable to the class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the class as a whole.

134.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

135.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Liberty comply with Subsection (H) and did Liberty's conduct constitute bad faith under Arizona law—will materially advance the litigation.

136.    Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Liberty has misrepresented, failed to disclose, and/or concealed the rights of Class members and those class members will remain ignorant of their potential claims against Liberty unless court-supervised notice is ordered.

137.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of other members of the Class.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

138.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

139.    Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Liberty Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Liberty's obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

140.    Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Liberty Policies, specifically that they are entitled to stacked UM/UIM coverage for multiple insured vehicles under the Liberty Policies; that Liberty is required to fully disclose the availability of or potential for stacked coverages to them; and that Liberty is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay stacked UM/UIM coverage benefits.

141.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

### SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

142.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

143.    Each Class member (including Plaintiff) is a party to one or more of the standardized Liberty Policies.

144.    Liberty breached those contracts by failing to pay stacked UM/UIM coverage to Plaintiff and the Class.

145.    Liberty further breached those contracts by failing to investigate, evaluate, and inform itself on Arizona law on stacked UM/UIM coverage; failing to fully disclose

the availability of or potential for stacked UM/UIM coverage under the Liberty Policies; misrepresenting, failing to disclose, and/or concealing the availability of stacked UM/UIM coverage in its communications with the Plaintiff and Class members; and denying the existence of any such stacked limits.

146.    The Class (including Plaintiff) has been and continues to be damaged by Liberty's breaches of contract.

147.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

### THIRD CLAIM FOR RELIEF
### (BAD FAITH AS TO THE CLASS)

148.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

149.    Inherent and implied in the Liberty Policies is a covenant of good faith and fair dealing owed to Plaintiff and the Class. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. See, e.g., Rawlings, 726 P.2d at 572-73.

150.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Allstate Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*, 995 P.2d at 280 ¶ 22. Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing

that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 726 P.2d at 576.

151.    Liberty breached the duty of good faith and fair dealing by failing to adequately investigate its stacking obligations, reasonably evaluate those obligations, and promptly pay stacked UM/UIM coverage to Plaintiff and Class members.

152.    Liberty did so despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its obligation to do so under Arizona law and considering its failure to comply with Subsection (H).

153.    The tort of bad faith also arises, independent of a claim denial or failure to pay, when the insurer fails to properly "inform the insured about the extent of coverage and his or her rights under the policy and do so in a way that is not misleading." *Nardelli*, 277 P.3d at 800 ¶ 54, citing *Rawlings*, 726 P.2d at 572-573. *See also Deese v. State Farm. Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1271 (Ariz. 1992) (Martone, J., concurring in the judgment) (describing Rawlings as follows: "In *Rawlings*, the contract claim was for fire insurance under the policy. The bad faith tort claim was for failing to disclose to the insured favorable information which would have helped the insured in a separate dispute with its neighbor. These were wholly different claims and thus Farmers' payment of the contract claim was irrelevant to the assertion of the bad faith tort claim. In that context, the contract claim was not an essential ingredient of the tort claim.") (internal citations omitted); *Zilisch*, 995 P.2d at 279 ¶ 20 ("if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith without regard to its ultimate merits") (internal quotation omitted).

154.    For example: "No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." AAC § 20-6-801(D)(1), quoted in *Nardelli*, 277 P.3d at 800 ¶ 55.

155.    As a second example: "No agent shall conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when

the benefits, coverages or other provisions are pertinent to a claim." AAC § 20-6-801(D)(2), quoted in *Nardelli*, *supra*.3

156.    Liberty breached the duty of good faith and fair dealing by failing to fully disclose the availability of or potential for stacked UM/UIM coverage under the Liberty Policies; misrepresenting, failing to disclose, and/or concealing stacked UM/UIM coverage in their communications with Plaintiff and Class members; and denying the existence of any such stacked limits.

157.    Liberty did so, even though they knew of, recklessly disregarded, or failed to investigate, evaluate, and inform themselves of their failure to comply with Subsection (H).

158.    Liberty, therefore, acted in bad faith toward Plaintiff and the Class.

159.    Plaintiff and the Class seek as compensatory damages the value of their unpaid UM/UIM stacking benefits under Arizona law.

160.    Liberty's conduct as to Plaintiff and the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

161.    Liberty is, therefore, liable to Plaintiff and the Class for punitive damages, which can be proven with common evidence.

162.    This claim arises out of contract and Plaintiff and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, both individually and on behalf of the Class, demands a trial by jury on all claims so triable, and respectfully request that the Court (i) certify the proposed Class under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) for

---

3 *See also cases cited in Nardelli,* 277 P.3d at 800 ¶ 55: *Sarchett v. Blue Shield of Cal*., 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 370 N.E.2d 941 (Ind. App. 1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

declaratory relief, injunctive relief, damages, and/or the determination of common issues, (ii) designate Plaintiff as representative of the Class, (iii) appoint Robert Carey or Hagens Berman as Class Counsel, and (iv) enter judgment in Plaintiff's favor against Liberty including the following relief:

A.    A declaratory judgment that Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles under the Liberty Policies; that Liberty is required to fully disclose the availability of or potential for stacked coverages to them; and that Liberty is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay stacked UM or UIM benefits.

B.    Compensatory damages for the Class in an amount to be proven at trial.

C.    Punitive damages as permitted by law.

D.    An award of Plaintiff's attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

E.    Statutory interest pursuant to A.R.S. § 20-462(A).

F.    Costs and expenses incurred herein to the maximum extent permitted by law.

G.    Pre-judgment and post-judgment interest to the maximum extent permitted by law.

H.    Such other relief as the Court deems just and proper.

# # #

1   Dated: August 6, 2024                      Respectfully submitted by,

2                                              HAGENS BERMAN SOBOL SHAPIRO LLP

3
                                               By: *s/ Robert. B. Carey*
4                                                  Robert B. Carey
                                                   John M. DeStefano
5                                                  E. Tory Beardsley
                                                   11 West Jefferson Street, Suite 1000
6                                                  Phoenix, Arizona 85003
                                                   Telephone: (602) 840-5900
7                                                  Facsimile: (602) 840-3012
                                                   Email:    rob@hbsslaw.com
8                                                            johnd@hbsslaw.com
9                                                            toryb@hbsslaw.com
10

11  THE SLAVICEK LAW FIRM
                                                   Brett L. Slavicek (SBN 019306)
12                                                 James Fucetola (SBN 029332)
                                                   Justin Henry (SBN 027711)
13                                                 5500 North 24th Street
                                                   Phoenix, Arizona 85016
14                                                 Telephone:  (602) 285-4435
                                                   Facsimile:  (602) 287-9184
15                                                 Email:    brett@slaviceklaw.com
16                                                           james@slaviceklaw.com
17                                                           justin@slaviceklaw.com

18                                             *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED
CLASS ACTION COMPLAINT